A. Mark Pope, Esq. [SBN: 77798]
Harvey C. Berger, Esq. [SBN: 102973]
**POPE, BERGER & WILLIAMS, LLP**
550 West "C" Street, Suite 1400
San Diego, California   92101
(619) 595-1366   Fax: (619) 236-9677
pope@popeberger.com
berger@popeberger.com

Louis M. Marlin, Esq. [SBN: 54053]
Stanley D. Saltzman, Esq. [SBN: 90058]
**MARLIN & SALTZMAN**
3200 El Camino Real, Suite 200
Irvine, California   92602
(714) 669-4600   Fax: (714) 669-4750
louis.marlin@marlinsaltzman.com
ssaltzman@marlinsaltzman.com

Attorneys for Plaintiffs
*Additional Plaintiffs' Counsel on following page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLGA ORTMANN and JUSTIN OPYRCHAL, individually, and on behalf of all other similarly situated current and former employees of Defendants in the State of California,<br><br>         Plaintiff,<br><br>v.<br><br>NEW YORK LIFE INSURANCE COMPANY, INC., a New York corporation; NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, INC., a Delaware corporation; and DOES 1 through 100, inclusive, and DOES 1-25, Inclusive,<br><br>         Defendants.<br>_____ | **CASE NO: CV 07-518 VBF (VBKx)**<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**DATE:**    **October 27,  2008**<br>**TIME:**    **1:30 p.m.**<br>**CTRM:**  **9**<br>**JUDGE:**  **Honorable Valerie Baker Fairbank**<br><br>Filed   concurrently   herewith:   (1) Declarations of Marcus J. Bradley and A. Mark Pope; (2) Joint Stipulation of Settlement; and (3) [Proposed] Order Granting   Preliminary   Approval   of Class Action Settlement and Certifying Class   Action   Conditionally   for Purposes of Settlement |

1

# ADDITIONAL PLAINTIFFS' COUNSEL

Marcus J. Bradley, Esq. [SBN: 174156]
**SCHWARTZ, DANIELS & BRADLEY**
29229 Canwood Street, Suite 208
Agoura Hills, California   91301
(310) 478-5838   Fax: (310) 478-1232
marcus.bradley@schwartzdanielsbradley.com

Douglas J. Campion, Esq. [SBN: 75381]
**LAW OFFICES OF DOUGLAS J. CAMPION**
411 Camino Del Rio South, Suite 301
San Diego, California   92108
(619) 299-2091   Fax: (619) 858-0034
doug@djcampion.com

Peter M. Hart, Esq. [SBN: 198691]
**LAW OFFICES OF PETER M. HART**
13952 Bora Bora Way, F-320
Marina Del Rey, California   90292
(310) 478-5789   Fax: (509) 561-6441
hartpeter@msn.com

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 27, 2008, at 1:30 p.m., or as soon thereafter as the matter may be heard in the Courtroom 9 before the Honorable Valerie Baker-Fairbank, United States District Court, 312 N. Spring Street, Los Angeles, California 90012, Plaintiffs Olga Ortmann and Justin Opyrchal will respectfully will move this Court for an Order for (1) Preliminary Approval of Class Action Settlement; (2) Certification of a Settlement Class; and (3) Preliminary Approval of Request for Attorneys' Fees and Costs.

This Motion is based on the accompanying Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Settlement, the Joint Stipulation of Settlement, the Declarations of Marcus J. Bradley and A. Mark Pope and exhibits attached thereto, all of the prior pleadings and papers in this action, and upon such additional evidence or argument as may be required by the Court.

DATED:  October 5, 2008          **POPE, BERGER & WILLIAMS**
                                 **LAW OFFICE OF DOUGLAS CAMPION**
                                 **LAW OFFICES OF PETER M. HART**
                                 **MARLIN & SALTZMAN**
                                 **SCHWARTZ, DANIELS & BRADLEY**


                                 By: _____

                                     MARCUS J. BRADLEY
                                     Attorneys for Plaintiffs and Proposed Plaintiff Class

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Proposed Class Representatives, Plaintiffs Justin Opyrchal and Olga Ortmann (hereinafter referred to as "Plaintiffs" or "Class Representatives"), respectfully submit this Memorandum in support of the parties' Joint Stipulation of Settlement (the "Stipulation").  Pursuant to that Agreement, the parties request that the Court enter an order:  (1) preliminarily approving the proposed settlement; (2) preliminarily certifying the proposed Class for purposes of the settlement only; (3) preliminarily certifying Plaintiffs as Class Representatives; (4) directing that the Class be given notice of the pendency of this action and the settlement; and (5) scheduling a hearing to consider final approval of the settlement, entry of a proposed final judgment, and counsels' application for an award of attorneys' fees and reimbursement of costs as well as the service payments to Plaintiffs.

For purposes of the proposed settlement, the Class that the Court is being asked to certify is defined as follows:

> All persons who signed a Training Allowance Subsidy Plan
> Agreement with New York Life Insurance Company or New York
> Life Insurance and Annuity Corporation in the State of California
> from December 11, 2002 through the date of Preliminary Approval.

Under the terms, the settlement of $10,000,000.00 (the "Maximum Settlement Amount ") will be paid out regardless of the number of class members making claims.  The Maximum Settlement Amount is made up of five parts:  (1) the sum of the Claim Amounts, which equals the Settlement Proceeds; (2) attorney's fees and costs to Class Counsel; (3) a Service Payment for each of the Plaintiffs; (4) Settlement Administration Costs; and (5) the Late Claim Reserve. The proposed settlement is set forth in the Stipulation which contains all the material terms of the settlement, including the manner and form of notice to be given to the Class, the contingencies or conditions to the settlement's final

1   approval, and other terms.

2       The proposed settlement described above fulfills the preliminary approval

3   criteria set forth in the Manual for Complex Litigation, 4th Ed.  By this Motion,

4   Plaintiffs request that the Court take the first step in the approval process –

5   preliminary approval of the settlement.

6       In determining whether preliminary approval is warranted, the issue before

7   the Court is whether the settlement is within the range of what might be found fair,

8   reasonable and adequate, so that notice of the settlement should be given to Class

9   members, and a hearing scheduled to consider final settlement approval.  The

10  Court is not required at this point to make a final determination as to the fairness

11  of the settlement.

12      Since the settlement meets the criteria for preliminary approval and is well

13  within the range of what might be approved as fair, reasonable and adequate,

14  Plaintiffs respectfully request that this Court enter the proposed Preliminary

15  Approval Order, submitted herewith.

16  **II.     SUMMARY OF THE LITIGATION**

17  **A.     History of Complaint**

18      Opyrchal filed his original complaint in the Los Angeles County Superior

19  Court on December 11, 2006, against New York Life Insurance Company, Inc.,

20  New York Life Insurance and Annuity Corporation, Inc., and New York Life and

21  Health Insurance Company ("NYLHIC"), as case no. BC 363208. New York Life

22  removed the Opyrchal action to the United States District Court, Central District

23  of California, on January 22, 2007 (Defendants shall hereafter be collectively

24  referred to as "New York Life" or "Defendant").  Plaintiff Opyrchal subsequently

25  dismissed NYLHIC. New York Life filed a motion to dismiss and a motion to

26  strike that resulted in the dismissal of Opyrchal's claims for punitive damages and

27  injunctive relief.

28

1    Ortmann filed her complaint against New York Life in the Alameda County

2    Superior Court on March 26, 2007, as case no. RG07317476. New York Life

3    removed the Ortmann action to the United States District Court, Northern District

4    of California, on May 19, 2007. New York Life filed a motion to stay or transfer

5    the action, motion to dismiss, and motion to strike.  Ortmann subsequently

6    dismissed her action without prejudice and joined the Opyrchal action as a named

7    plaintiff. Ortmann and Opyrchal filed the operative Second Amended Complaint

8    ("SAC") on July 23, 2007.

9    **B.     Claims and Causes of Action**

10    The SAC asserts claims for failure to pay minimum wage (first cause of

11    action), based on the allegation that, while in training, TAS Agents (as defined in

12    Section 1.39 of the Stipulation) were not eligible for the outside sales exemption

13    and therefore were entitled to minimum wage and other benefits of non-exempt

14    employees.  The SAC further asserts claims for failure to indemnify and reimburse

15    for business expenses and unlawful deductions from wages, including but not

16    limited to, requiring TAS Agents to pay monthly rent on a cubicle, pay monthly

17    telephone service charges, pay for required specialized software and technical

18    support for that software as a monthly charge, pay copy charge fees, and failing to

19    reimburse for business expenses, e.g., mileage, laptop computers, and office

20    supplies (second cause of action).  The SAC further claims a failure to provide

21    properly itemized wage statements (third cause of action), wages untimely paid at

22    the time of termination (fourth cause of action), compelling or coercing TAS

23    agents to patronize New York Life by paying rent for cubicles, charges for

24    telephone service, surcharges for copying, and purchase of insurance policies,

25    among others (fifth cause of action).  The SAC further claims that New York Life

26    asserts claims for unfair business practices (sixth cause of action), and unlawful

27    business practices (seventh cause of action).  These claims are brought under

28

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Labor Code sections 200 to 203, 218.6, 221, 223, 226, 450, 451, 1171, 1194, 1194.2, and 2802 et seq., IWC Wage Order 4-2001, and Business & Professions Code sections 17200 et seq.

**C.    Discovery**

During the course of the litigation, the parties have conducted substantial formal discovery. Plaintiffs' counsel reviewed thousands of pages documents either produced by Defendant or obtained by counsel through other sources. These documents provided counsel with a critical understanding of the nature of the work done by Class Members, and were used in analyzing liability and damage issues in connection with the mediation process.

Both of the Named Plaintiffs had their depositions taken. Additionally, Plaintiffs' counsel traveled to New York to take the depositions of multiple New York Life executives. Plaintiffs' counsel were also provided with Class Member ledger data which was provided to an expert statistician. The expert performed a series of calculations regarding potential damages which was relied on by Plaintiffs' counsel at the mediation.

**D.    Contact with Class Members**

Class counsel sent letters to approximately 1800 class members informing them of the nature of the lawsuit and requesting that they contact Class Counsel to the discuss the case. Thereafter, Class Counsel spoke with a significant number of Class members, most of whom provided vital information concerning the nature of the work they performed while employed by Defendant and the claimed expenses that they incurred as well as claimed business deductions made by Defendant. The information obtained assisted Class Counsel in establishing a statistical basis for determining a reasonable estimate of the amount of damages claimed to be owed to the Class as a whole. This information proved invaluable in negotiations with Defendant in reaching a settlement that Plaintiffs believe properly and adequately

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

1   compensates Class members for their claims.

2       The representative Plaintiffs also provided valuable assistance to Class
3   Counsel in the prosecution of this matter in connection with understanding the
4   functions of New York Life insurance agents, the training involved and the
5   claimed amount of business expenses incurred.

6   **III.    THE SETTLEMENT PROCESS**

7       The settlement process in this matter has been conducted over a substantial
8   number of months.  Throughout the litigation process, both sides looked for
9   appropriate opportunities to engage in meaningful settlement discussions.  Once
10  the primary liability discovery had been completed and the pleadings resolved,
11  both sides agreed to mediation.

12      A mediation was held in Los Angeles with Lynne Frank, a highly regarded
13  mediator with an expertise wage and hour class actions. During the mediation, the
14  Plaintiffs and Proposed Class were represented by five attorneys, each of whom
15  was charged with being prepared to respond to Defendant's arguments concerning
16  a variety of issues (i.e., liability issues, expenses, deductions,  etc.)  In addition, an
17  expert relating to Plaintiffs' damage calculations was on standby in his office in
18  San Diego to assist Plaintiffs' counsel at the mediation.  The mediation included
19  discussion and examination of the Parties' respective positions on the legal and
20  factual issues raised by the SAC.

21      The mediator-conducted settlement discussions were ultimately successful.
22  A basic settlement agreement was reached, with the specific details of
23  implementation and notice wording, etc., left for direct negotiations between the
24  parties.

25      The parties have continued to engage in negotiations in order to finalize the
26  formal Settlement Agreement which is the subject of this Motion.  These further
27  negotiations have been arduous, and have literally dealt with every issue of the

28

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

1  settlement terms and conditions.  This has included literally hundreds of telephone
2  calls, e-mail, and numerous draft versions of various documents.  At all times, the
3  Parties' settlement negotiations have been non-collusive, adversarial, and at arm's
4  length.  The Parties agree that the above-described investigation and evaluation, as
5  well as discovery and the information exchanged during the settlement
6  negotiations, are more than sufficient to assess the merits of the respective Parties'
7  positions and to compromise the issues on a fair and equitable basis.

8  **IV.    SUMMARY OF SETTLEMENT**

9          The parties have entered into the Settlement Agreement which completely
10 resolves the above-captioned action against the Defendant.  Defendant has agreed
11 to a non-reversionary $10,000,000.00 settlement.  If the settlement is approved by
12 the Court, the above-captioned action will be dismissed, with prejudice, and
13 Defendant will receive a release of claims as set forth in the Stipulation.

14         As a part of the settlement, the parties have agreed to the certification of a
15 Settlement Class defined as:

16         All persons who signed a Training Allowance Subsidy Plan
17         Agreement with New York Life Insurance Company or New York
18         Life Insurance and Annuity Corporation in the State of California
19         from December 11, 2002 through the date of Preliminary Approval.

20         The Settlement Proceeds and Late Claims Fund will be distributed to
21 Settlement Class Members pursuant to the claim procedure, as set forth in the
22 Stipulation, which fairly allocates the net proceeds of the settlement to members of
23 the Settlement Class who submit complete Claim Forms.

24         Each Settlement Class Member who submits complete Claim Form will
25 receive a pro rata share of the Settlement Proceeds.  As a non-reversionary
26 settlement, all of the Maximum Settlement Amount will be paid to the class after
27 the payment of Court-approved attorneys' fees, costs, Settlement Administration

28

1  Costs, and Class Representative Service Payments.  After the settlement has been
2  finally approved by the Court, the settlement proceeds will be distributed to
3  claimants pursuant to the terms of the Settlement.

4          The Court is requested to appoint Pope, Berger & Williams, LLP, Marlin &
5  Saltzman, Schwartz, Daniels & Bradley, Law Offices of Douglas J. Campion, and
6  Law Offices of Peter Hart as class settlement counsel ("Class Counsel") with
7  respect to all members of the Settling Class.  In addition, the Court is asked to
8  appoint Justin Opyrchal and Olga Ortmann as Representative Plaintiffs.

9  **V.     PRELIMINARY SETTLEMENT APPROVAL**

10 **A.     The Settlement Should Be Preliminarily Approved.**

11         Federal Rule of Civil Procedure 23(e) provides that any compromise of a
12 class action must receive Court approval.  In determining whether a proposed
13 settlement should be approved, the Ninth Circuit has a "strong judicial policy that
14 favors settlement, particularly where complex class action litigation is concerned."
15 *In re Heritage Bond Litigation*, 2005 WL 1594403, citing *Class Plaintiffs v.*
16 *Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  This policy is driven by "an
17 overriding public interest in settling and quieting litigation. . .[t]his is particularly
18 true in class action suits which are now an ever increasing burden to so many
19 federal courts and which frequently present serious problems of management and
20 expense." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

21         This approval "involves a two-step process in which the Court first
22 determines whether a proposed class action settlement deserves preliminary
23 approval and then, after notice is given to class members, whether final approval is
24 warranted." *Nat'l Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221
25 F.R.D. 523, 524 (C.D. Cal. 2004), citing *Manual of Complex Litigation*, Third, §
26 30.41 at 236-37 (1995).  See also *Colesberry v. Ruiz Food Products, Inc.*, 206 WL
27 187444, *6 (E.D. Cal. 2006), citing *In re Jiffy Lube Sec. Litigation*, 927 F.2d 155,

28

158 (4th Cir. 1991) ("The court ordinarily holds a preliminary hearing to determine whether there is a likelihood it could approve the settlement before conducting a full 'fairness hearing'").

At the preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Ultimately, a class action should be approved if "it is fundamentally fair, adequate and reasonable." *Class Plaintiffs v. Seattle*, 955 F.2d at 1276. See also *Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("the court's intrusion on what is otherwise a private consensual agreement negotiated between parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned"). There is further a "strong initial presumption that the compromise is fair and reasonable." *In re Microstrategy, Inc. Sec. Litigation*, 148 F.Supp.2d 654, 663 (E.D. Va. 2001).

Although at this stage of preliminary approval, the Court is not expected to engage in the more rigorous analysis as is required for final approval (see *Manual for Complex Litigation*, Fourth, § 22.661 at 438 (2004)), the Court's ultimate fairness determination will include balancing several factors, including some or all of the following:

> . . . the strength of plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

1    reaction of the class members to the proposed settlement.

2    *Officers for Justice*, 688 F.2d 625.  Not all of the above factors apply to

3    every class action settlement, and one factor alone may prove determinative in

4    finding sufficient grounds for court approval. *Nat'l Rural*, 221 F.R.D. at 525-26.

5    District courts have wide discretion in assessing the weight and applicability of

6    each factor. *Id.*

7    **B.    The Settlement Agreement Resulted from Arm's Length Negotiations.**

8         There is an initial presumption that a proposed settlement is fair and

9    reasonable when it is the result of arm's length negotiations.  See *Williams v.*

10   *Vukovich*, 720 F.2d 909, 922-923 (6th Cir.1983)  ("The court should defer to the

11   judgment of experienced counsel who has competently evaluated the strength of

12   his proofs"); *In re Excess Value Ins. Coverage Litig.*, No. M-21-84 (RMB) 2004

13   U.S. Dist. LEXIS 14822, at *34 (S.D.N.Y. July 30, 2004)  ("Where 'the Court

14   finds that the Settlement is the product of arm's length negotiations conducted by

15   experienced counsel knowledgeable in complex class litigation, the Settlement

16   will enjoy a presumption of fairness'"); *In re Inter-Op Hip Prosthesis Liab. Litig.*,

17   204 F.R.D. 359, 380 (N.D. Ohio 2001) (granting preliminary settlement approval)

18   ("when a settlement is the result of extensive negotiations by experienced counsel,

19   the Court should presume it is fair"); see also *2 Herbert Newberg & Alba Conte*,

20   Newberg on Class Actions §11.24 (4th Ed. & Supp. 2002); *Manual For Complex*

21   *Litigation* (Fourth) §30.42.

22        The proposed settlement here is the product of hours of arm's length

23   negotiations over the course of many weeks between counsel for Plaintiffs and

24   counsel for Defendant.  The parties have conducted significant investigation of the

25   facts and law during the prosecution of this action.  Such investigations have

26   included, inter alia, the exchange of a significant amount of information;

27   numerous meetings and conferences between representatives of the parties; and

28

interviews of potential witnesses.  Counsel for the parties have further investigated the applicable law as applied to the facts discovered regarding the alleged claims of Plaintiffs and potential defenses thereto, and the damages claimed by Plaintiffs.

In pertinent part, Plaintiffs claim that Defendant failed to pay Plaintiffs for all time spent in mandatory training and for all expenses incurred as required by California state law.  Additionally, Plaintiffs believe that Defendant has deducted from Plaintiffs' compensation certain business expenses not allowed by California law.  Among other defenses, New York Life contends that the Class Members were and are properly classified as exempt under the outside sales exemption, and that therefore the claim for minimum wage and other related claims have no merit.  In addition, New York Life contends that various expenses sought by Plaintiffs were not incurred or were not reasonable necessary expenditures and the alleged deductions at issue were a permissible component of a commission calculation and did not violate applicable state law.  New York Life also contends that it had an expense allowance plan in place to reimburse for reasonable and necessary business expenses.  New York Life denies that it compelled or coerced TAS Agents to purchase insurance policies.  New York Life also contends that the action was not suitable for class certification.

Plaintiffs' counsel appreciate the defenses and position of Defendant, but believes Plaintiffs would ultimately succeed in the action.  Defendant, on the other hand, continues to contend it compensated Plaintiffs in accordance with California law.

The parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation.  The negotiations were at all times conducted professionally and at arm's length, and have produced a result that the parties believe to be in their respective best interests.  The opinion of experienced counsel, as here, supporting the settlement is entitled to considerable weight.  *In re*

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

1   *First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL Docket No. 901 All

2   Cases, 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10, 1992) (finding

3   belief of counsel that the proposed settlement represented the most beneficial

4   result for the class to be a compelling factor in approving settlement); *Kirkorian v.*

5   *Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is

6   entitled to considerable weight); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622

7   (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a

8   presumption of reasonableness).

9       Plaintiffs have also taken into account the uncertainty and risk of the

10   outcome of further litigation, and the difficulties and delays inherent in such

11   litigation. Plaintiffs are also aware of the burdens of proof necessary to establish

12   liability for the claims asserted in the action (the "Claims" or "Class Action

13   Claims"), Defendant's defenses thereto, and the difficulties in establishing

14   damages.

15       Based on the foregoing, Plaintiffs have determined that the settlement set

16   forth in the Stipulation is a fair, adequate and reasonable settlement, and is in the

17   best interests of Plaintiffs and the Proposed Plaintiff Class.  Defendant is confident

18   that it has strong legal and factual defenses to the Claims, but it recognizes the

19   risks, distractions, and costs associated with litigation.  In light of this, the

20   Settlement is a compromise and is not an admission of liability on the part of

21   Defendant.  Both sides agree that in light of the risks and expenses associated with

22   continued litigation, this Settlement is fair and appropriate under the

23   circumstances, and in the best interests of the Class Members.

24   **VI.**     **THE SETTLEMENT HAS NO OBVIOUS DEFICIENCIES**

25       The proposed settlement has no obvious deficiencies.  Under the terms of

26   the settlement, Defendants has agreed to create a fund consisting of a maximum of

27   $10,000,000.00.  The settlement provides no preferential treatment for Plaintiffs or

28

other Class members.  Plaintiffs will receive distributions from the settlement proceeds calculated in the same manner as the distributions to all other Class Members.  Moreover, the settlement does not mandate excessive compensation for Plaintiffs' counsel.  Plaintiffs' counsel is authorized to apply for an award of attorneys' fees not to exceed thirty percent (30%) percent of the Settlement Fund, and reimbursement of expenses, and any award of fees and expenses is subject to Court approval.

The settlement has been reached after considerable negotiation and after the mediation efforts of a highly experienced mediator.  Each side evaluated the strengths and weaknesses of its case and independently came to the conclusion that this settlement represents a responsible means of addressing the claims of the Plaintiffs and the defenses of the Defendant.  Given the foregoing, the settling parties evaluated and considered all alternatives in reaching their settlement decisions and now urge this Court to grant preliminary approval.

## VII.   APPLICATION FOR CERTIFICATION OF CLASS FOR SETTLEMENT PURPOSES

The preliminary approval process is also utilized to certify a settlement class when a class has not been previously certified by the court.  The court can certify a class where plaintiffs demonstrate that the proposed class and proposed class representatives meet the four prerequisites in Federal Rules of Civil Procedure, Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one of the three requirements of Federal Rules of Civil Procedure, Rule 23(b).

Here, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and for the purposes of settlement only, the Named Plaintiffs seek preliminary certification of a class of:

All persons who signed a Training Allowance Subsidy Plan

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Agreement with New York Life Insurance Company or New York Life Insurance and Annuity Corporation in the State of California from December 11, 2002 through the date of Preliminary Approval.

As detailed below, the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in this action.

1.    Numerosity – The numerosity requirement is satisfied if the proposed class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. Rule 23(a)(1). Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964.) Here, investigation and disclosure by Defendant revealed approximately 2000 potential class members. Therefore, numerosity is satisfied.

2.    Commonality – Commonality relates to whether there are "questions of law or fact common to the class." Fed.R.Civ P. Rule 23(a)(2). Commonality is satisfied if there is one issue common to class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998.) Here, Plaintiffs submit that common issues include: Whether Plaintiffs were properly classified as exempt during mandatory training time; whether Defendant reimbursed Plaintiffs for reasonable and necessary business expenses; and whether deductions were made by Defendant for reasonable necessary business expenses. These issues satisfy commonality.

3.    Typicality – Typicality under Rule 23(a)(3) is satisfied if the representative plaintiff's claims share a common element with the Class because they arise from the same course of conduct that gave rise to the claims of other Class members. *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988.) Plaintiffs submit that their claims are typical of those of other Class members because, like other members of

the Class, they contend that they were not compensated for mandatory training time and were not reimbursed for all business expenses. Additionally, Plaintiffs had similar deductions made by Defendant from their compensation during the Settlement Class Period and contend that these deductions were improper and were damaged thereby.

4.      Adequacy of Representation – Adequacy under Rule 23(a)(4) is satisfied if the named plaintiff has no disabling conflicts of interest with other members of the class and plaintiff's counsel are competent and well qualified to undertake the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978.) Here, the Plaintiffs are represented by counsel who have extensive experience in complex litigation and have protected the interests of the Class. (See Declarations of Marcus J. Bradley and A. Mark Pope)

Additionally, no conflict exists between the Plaintiffs and the members of the Class because the Plaintiffs claims to have been damaged by the same alleged conduct and have the incentive to fairly represent all Class Members' claims to achieve the maximum possible recovery.

5.      Questions of Law and Fact Predominate – Plaintiffs submit that that common questions of law or fact predominate over individual questions pursuant to Rule 23(b)(3) in that the issues of fact and law raised in this action are common to all members of the Class and will predominate in this case. In this case, Plaintiffs allege, and Defendant disputes, that Defendant failed to pay Plaintiffs for all time spent in mandatory training and for all expenses incurred as required by California state law. Additionally, Plaintiffs contend, and Defendant disputes, that Defendant has deducted from Plaintiffs' compensation certain business expenses not allowed by California law. Because there are common issues, this requirement is satisfied. Proof of that common course of conduct would establish Defendant's liability as to all members of the Class.

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

6.     Superiority of Class Action – The requirement that a class action is superior to other methods of adjudication under Rule 23(b)(3) is also met. Courts have recognized that the class action devise is superior to other available methods for the fair and efficient adjudication of controversies involving large number of employees in wage and hour disputes.

Based upon the Stipulation of the parties, it is respectfully requested that the Court certify the Class as defined herein for settlement purposes only.

In the event final approval of the settlement is not granted, the parties will occupy the same legal posture that they occupied at the outset of the litigation and be free to assert any claim or defense that they could have asserted at the outset of the litigation.

## VIII. APPLICATION FOR AWARD OF ATTORNEYS' FEES AND COSTS

As part of the request for Final Approval of this settlement, Plaintiffs' counsel will seek an award of attorneys' fees of $3,000,000.00.  Additionally, Plaintiffs seek reimbursement of Court approved costs approximating $29, 942.89. Defendant will not object to this request.  As noted above, the Settlement Sum of $10,000,000 is a non-reversionary fund, with no funds returning to Defendant. The attorneys' fees sought are based on this true fund.

While it is sometimes considered as a "common practice" for an attorney fee application in a class action to be made only in connection with the Final Fairness hearing, the counsel representing the Plaintiff in this matter have traditionally presented the Court with some preliminary argument and information concerning the fee application as a courtesy to the Court.  Since Federal Rules of Civil Procedure, Rule 23, requires that the Class be given notice of the agreement of the parties that Plaintiffs' counsel will seek a $3,000,000.00 fee and that Defendant will not oppose such application, it is thought that seeking preliminary approval of

the requested fees is the more appropriate course of conduct.[1]

Class Counsel now apply to the Court for a contingent award of attorneys' fees in an amount equal to thirty (30%) percent of the Settlement Fund. This percentage award is commensurate with (1) the risk Class Counsel took in commencing this action; (2) the time, effort and expense dedicated to the case; (3) the skill and determination they have shown; (4) the results they have achieved throughout the litigation; (5) the value of the settlement they have achieved for Class members; and (6) the other cases counsel have turned down in order to devote their time and efforts to this matter.

The obvious risk, at the time this case was commenced, was that the theory of recovery raised by Plaintiffs and their counsel would prove to be invalid. In addition, counsel knew that they would be challenging a major corporation. Counsel believed that obtaining a remedy would be anything but easy.

Class Counsel faced risk and difficulty on numerous levels. It was clear from the outset that this case would be hotly contested and that significant manpower would be needed to litigate the case properly.

The governing principles, as well as a survey of attorney fee jurisprudence (both in California and throughout the country) reveal that trial courts have "wide latitude" in assessing the value of attorneys' fees and their decisions. Class Counsel seek a fee award for their successful prosecution and resolution of this action, calculated as a percentage of the total value of benefits afforded the Class members by the settlement. *Boeing Co. v. Van Gemert* (1980) 444 U.S. 472, 478; see also *Vincent v. Hughes Air West, Inc.* (9th Cir. 1977) 557 F.2d 759, 769.) The purpose of this equitable doctrine is not only to avoid unjust enrichment of counsel but also to spread litigation costs proportionally among all the

---

[1] Again, this is a request for preliminary approval. A more detailed application will be made at te time of the Final Fairness hearing.

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

1    beneficiaries so that the active beneficiary does not bear the entire burden alone.

2    *Vincent v. Hughes Air West, Inc., supra*, 557 F.2d at 769.  Where the amount of a

3    settlement is a "certain easily calculable sum of money," California courts may

4    calculate attorney fees as a reasonable percentage of the settlement created.  Weil

5    and Brown, *California Practice Guide*, *Civil Procedure Before Trial*, Chapter 14,

6    §14:145;  *Dunk v. Ford Motor Co.* (1996) 48 Cal. App. 4th 1794, 1808.

7    　　　　The goal in a case such as this is to set a fee that approximates the probable

8    terms of a contingent fee contract negotiated by a sophisticated attorney and client

9    in comparable litigation.  A review of class action settlements over the past ten

10   years shows that the courts have historically awarded fees in the range of 20% to

11   50%, depending upon the circumstances of the case.  Class Counsel's requested

12   fee comes to 30%, a percentage well within the range of reasonableness.  In

13   discussing the range of fees, Judge Marilyn Patel stated in the *Activision* litigation:

14   　　　　In *In re Warner Communications Sec. Lit.* (S.D.N.Y. 1985) 618

15   　　　　F.Supp. 735, 749-50, Judge Keenan concluded that the fees range

16   　　　　from 20% to 50%.  The average of the fees in the sixteen cases listed

17   　　　　in Warner is 30.6%.

18   　　　　*In re Activision Securities Litigation* (N.D. Cal. 1989) 723 F.Supp.

19   　　　　1373, 1378.

20   Professor Newberg is in accord:

21   　　　　No general rule can be articulated on what is a reasonable percentage

22   　　　　of a common fund.  **Usually 50% of the fund is the upper limit** on a

23   　　　　reasonable fee award from a common fund in order to assure that the

24   　　　　fees do not consume a disproportionate part of the recovery obtained

25   　　　　for the class, although somewhat larger percentages are not

26   　　　　unprecedented.

27   Newberg, *Newberg on Class Actions*, 4th Ed., 2002, vol. 4, p. 550.

28

The *Warner* case, *Newberg on Class Actions*, and other authorities in various Federal judicial circuits all support the conclusion that fees between 20% and 50% of a common fund have normally been awarded over the past several years.

It is respectfully requested that the Court grant preliminary approval to the request for attorneys' fees as noted herein. In addition, at the time of the Final Fairness hearing, Class Counsel will present a detailed cost breakdown and request for reimbursement of the same.

## IX.    NATURE AND METHOD OF CLASS NOTICE

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Fed.R.Civ.P.* Rule 23(c)(2)(B). "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal or compromise." *Fed.R.Civ.P.* Rule 23(e)(B).

The parties have agreed upon a form of Notice of Settlement (Exhibit B to the Joint Stipulation of Settlement). The Notice shall be sent by the claims administrator to the Class, by first class mail, within thirty (30) days after entry of the order granting preliminary approval of the settlement and notice. The actual dates to be inserted in the Notice will be adjusted, as necessary, to give Class Members sixty (60) days within which to submit their claims and sixty (60) days within which to file and serve written objections to the settlement. The claims administrator will conduct a search using the U.S. Postal Service National Change of Address database to validate or update the addresses of the Class Members who are former TAS Agents of New York Life before to sending Class Notice, and appropriate skip tracing as to any returned notices to ensure that the Notice and Claim Form are sent to all Class Members.

Moreover, the parties have agreed that the Claims Administrator shall, in its discretion, to utilize the services of a private investigator to locate class members who are not otherwise found through the skip tracing process used by the Claim Administrator.  The cost of such extraordinary efforts, up to a maximum of $400, shall be deducted from the located class member's Claim Share, not from the Settlement Fund.  The Claims Administrator will utilize only a private investigator who will perform these services on a contingency basis such that if the class member is not located there will be no charge.  (See Section 10.11 of the Stipulation).

The Notice will be accompanied by a Claim Form (Exhibit A to the Joint Stipulation of Settlement).  The Claim Form for each Class Member will reflect the total number of weeks of service as a TAS Agent of the Class Member during the Class Period as shown by New York Life's records and the gross amount of the Estimated Claim Amount for the individual Class Member, before state and federal tax withholdings. (See Section 10.4 of the Stipulation).

In order to increase participation, 45 days after the Claims Administrator mails the Notice Packets to Class Members, Class Counsel may direct the Claims Administrator to place one telephone call to specified Class Members who have not submitted a Claim Form, or who have not corrected a deficient Claim Form. During this call, the Settlement Administrator will follow a script approved by Defendants' Counsel and Class Counsel.  If the Claims Administrator does not reach the Class Member, the Claims Administrator shall attempt to leave a message with a return phone number.  If the Class Member requests any information about the settlement, the Claims Administrator will provide that information.  (See Section 10.16 of the Stipulation).

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

The Notice of Settlement will include a website address for a website created by and maintained by the Claims Administrator.  The website will include information about the settlement and a copy of the Second Amended Complaint, the Joint Stipulation of Settlement, and the Notice of Settlement. (See Section 10.6 of the Stipulation).

Finally, a Late Claim Reserve in the amount of forty thousand dollars ($40,000.00) shall be set aside to cover the payment of Late Claims.  Any Class Member who submits a Late Claim shall be entitled to a Late Claim Amount as if his or her claim had not been late, and computed on the same basis as if it represented a share from the Settlement Proceeds, except that (i) all Late Claims shall be paid solely from the Late Claim Reserve; and (ii) the total paid for all such Late Claims shall not exceed the amount of the Late Claim Reserve.  If the total of the Late Claim Amounts exceed the Late Claim Reserve, all Late Claim Amounts shall be reduced proportionately so that the total paid to Class Members submitting Late Claims does not exceed $40,000.00.  If the total of the Late Claim Amounts is less than $40,000, the undistributed portion of the Late Claim Reserve shall be distributed pursuant to Code of Civil Procedure Section 384 to the United Way.

## X.   CLASS ADMINISTRATION

Plaintiff seeks the appointment of Rosenthal & Co. as the Claims/Class Administrator.  Rosenthal & Co. is one of the most experienced class administration companies in the country and had acted as claims administrator in hundreds of wage and hour cases throughout the country.

## XI.   REQUEST FOR SERVICE PAYMENT

Plaintiffs have assisted Class Counsel in the prosecution of this action. They have provided the names of witnesses and have provided insight and information to Class Counsel that has proven to be invaluable.

Plaintiffs responded to written discovery.  Importantly, both Plaintiff Ortmann and Plaintiff Opyrchal had their depositions taken and spent significant time preparing for these depositions.

Service Payments for representative plaintiffs are granted by the courts.  For example, in *Enterprise Energy Corp. vs. Columbia Gas Transportation Corp.* (S.D. Ohio 1991) 137 F.R.D. 240, 250-251, each representative plaintiff was granted a $50,000.00 incentive award in a settlement significantly smaller than the one before this Court.  See also, *In re Dunn & Bradstreet Credit Services Customer Litigation* (S.D. Ohio 1990) 130 F.R.D. 366, where the various representative plaintiffs received incentive awards ranging from $35,000.00 to $55,000.00.

Plaintiffs, for whom a Service Payment is being requested, have assisted Class Counsel in the litigation of this case.  The court is being asked to approve that they receive, in addition to their actual award, a Service Payment of $25,000.00.  Defendant will not object to such awards.

## XII.   FINAL APPROVAL HEARING

Plaintiffs request that the Final Fairness Hearing be set between February 23, 2009 and March  9, 2009, depending on the actual date that the class notice is sent to the class members.  This will permit the Claims Administrator to mail the notice, and for Class Counsel to prepare a report concerning any response to the same prior to the hearing.

## XIII. CONCLUSION

Counsel for the parties have reached this settlement following extensive discussions and arm's length negotiations.  The Court need not determine at this stage whether the settlement is fair, reasonable and adequate.  The Court is merely being asked to permit notice of the terms of the settlement to be sent to the Class and to schedule a final settlement hearing to consider the fairness of the

settlement, entry of a proposed final judgment, and counsels' request for an award
of fees and reimbursement of expenses.  Plaintiffs respectfully request that the
Court grant preliminary approval of the proposed settlement and enter the
proposed Preliminary Approval Order submitted herewith.

DATED: October 5, 2008

                                POPE, BERGER & WILLIAMS
                                LAW OFFICE OF DOUGLAS CAMPION
                                LAW OFFICES OF PETER M. HART
                                MARLIN & SALTZMAN
                                SCHWARTZ, DANIELS & BRADLEY


                                By: _____
                                    MARCUS J. BRADLEY
                                    Attorneys for Plaintiffs and Plaintiff Class

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**